No. 99-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 315N

LORI POWERS,

Plaintiff and Appellant,

v.

INTERBEL TELEPHONE COOPERATIVE, INC.,

a corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy C. Kelly, Attorney at Law, Emigrant, Montana

For Respondent:

Darrell S. Worm, Ogle & Worm, PLLP, Kalispell, Montana

Submitted on Briefs: July 20, 2000
Decided: December 7, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The Plaintiff, Lori Powers brought this action in the District Court for the Nineteenth Judicial District in Lincoln County and alleged that the Defendant, Interbel Telephone Cooperative, Inc. discriminated against her based on her gender and retaliated against her in violation of §§ 49-2-303(1) and -301, MCA. After a nonjury trial, the District Court found that Powers did not prove discrimination or retaliation. Powers appeals the court's findings and conclusions. We affirm the judgment of the District Court.

¶3 Powers presents two issues on appeal:

¶4 1. Did the district court err when it found that Powers had not proven a prima facie case of discrimination?

¶5 2. Did the district court err when it found that Powers did not prove illegal retaliation?

## FACTUAL BACKGROUND

¶6 Lori Powers was trained by her husband, Brad as a journeyman technician and together they worked as independent contractors on a number of cable telecommunications projects throughout the 1980s and 1990s. In 1988 and 1989, Interbel hired them to perform subcontract work. Soon afterwards, the Powers bought land in Northwest Montana and inquired about employment possibilities at Interbel.

¶7 In April 1995, Interbel advertised for a "combination technician." Both Powers and her husband submitted applications. Interbel interviewed Brad and three others, including John Reynolds, for the position. It did not interview Powers. Interbel gave the job to John

Reynolds. At trial, it offered evidence that it found him to be the most qualified applicant.

¶8 In November 1995, Powers filed a formal complaint with the Human Rights Commission. In May 1996, Interbel advertised that a "facility maintenance technician" position was open. Lori Powers sent in her application. Interbel returned it and explained that it had decided not to fill the position. Then in December 1996, Interbel found it necessary to fill two apprentice combination technician positions. These positions were filled by two men already employed by Interbel without giving the public notice of the job openings.

¶9 At trial, Powers represented herself. After consideration of the evidence presented by both parties, the District Court found that: (1) all positions for which Powers applied were either filled by a more qualified candidate or not filled at all; and (2) that she had therefore proven neither gender discrimination nor retaliation.

## ISSUE ONE

¶10 Did the District Court err when it found that Powers had not proven a prima facie case of discrimination?

¶11 The Supreme Court reviews a district court's findings of fact to determine whether they are clearly erroneous. *State Dep't of Natural Resources and Conservation v. Montana Power Co.* (1997), 284 Mont. 59, 63, 943 P.2d 1251, 1254. Findings of fact are clearly erroneous if: (1) they are not supported by substantial evidence; (2) the trial court misapprehended the effect of the evidence; or (3) based on the court's review of the record, we are left with a definite and firm conviction that a mistake has been committed. *Montana Power*, 284 Mont. at 63, 943 P.2d at 1254 (citing *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

¶12 In the absence of direct evidence of discrimination, the *McDonnell Douglas* three-part burden shifting analysis is the proper procedure for evaluation of a discrimination claim. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792. In *Taliaferro v. State* (1988), 235 Mont. 23, 764 P.2d 860, this Court explained the *McDonnell Douglas* approach as follows: (1) the plaintiff has the burden to prove a prima facie case of discrimination; (2) if the plaintiff proves a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action; (3) should the defendant carry this burden, the plaintiff must then prove by a preponderance of evidence

that the reasons for the adverse action offered by the defendant are a mere pretext for discrimination. An employee proves a prima facie case of discrimination if she proves that: (1) the employer received an application from a person in a protected class; (2) an employment opportunity existed at the time of the application; and (3) the person was not selected. *Taliaferro*, 235 Mont. at 28, 764 P.2d at 863-64.

¶13 The District Court concluded that Powers failed to prove a prima facie case because she was not as qualified as the candidate ultimately hired by Interbel. Appellant contends, and we agree, that this comparative evaluation is not proper as part of the prima facie consideration. However, the McDonnell Douglas burden-shifting process is simply designed to guarantee claimants their day in court. Once a trial on the merits has occurred, the error is harmless. The court in this case evaluated all evidence simultaneously without regard to burden-shifting.

¶14 As the Respondent points out, the record shows that the District Court properly examined all evidence before making its decision. The District Court found that Powers failed to prove that she was the victim of employment discrimination. In the course of the two-day trial, the record demonstrates that the District Court gave considerable latitude to Powers when she presented evidence. Notwithstanding, the record does not demonstrate gender discrimination by the Respondents.

¶15 Through her own testimony, Powers presented different explanations for what may have soured her relationship with Interbel. First, she contended that a disagreement over an easement in 1993 affected her and her husband's opportunities with the company. Second, she made several accusations to an Interbel official regarding company nepotism that she believes lead to the termination of Interbel workers. Furthermore, she complained of equally bad treatment endured by her husband during the same time. Her husband, despite greater skills and more experience than Powers, was not hired by Interbel. Power's own evidence supported a finding by the District Court that Interbel's decision not to hire her was based on factors other than her gender.

¶16 In addition, the District Court determined that Interbel offered legitimate non-discriminatory reasons for repeatedly failing to hire or interview Powers and offered evidence that Interbel chose the most qualified person for the 1995 combination technician vacancy. Although John Reynolds worked in the business for fewer years than either of the Powers, he appeared to be more experienced in the specific skills needed by Interbel. The District Court found that "Powers was less qualified for the Combination Technician

position than either her husband or John Reynolds." The court heard the testimony of John Reynolds, Interbel's manager, Mike Gordon , and the Powers and reviewed their resumes. Our review of the record finds evidence to support the District Court's finding that Reynolds was better qualified for the position of combination technician and we therefore conclude that this finding was not clearly erroneous.

¶17 Powers also argues that Interbel's policies and practices caused a disparate impact upon women. Employers violate the law based on a disparate impact theory when an employer's conduct involves employment practices that are facially neutral in their treatment of different groups, but which in fact, fall more harshly on one group than another. *Brewster v. Barnes*, (4th Cir. 1986), 788 F.2d 985, 991-92. To prove disparate impact, the plaintiff must identify the specific employment practices allegedly responsible for any observed statistical disparities and then prove causation. *Watson v. Fort Worth Bank and Trust* (1988), 487 U.S. 977, 990. The ultimate burden remains with the plaintiff. *Id.* at 997.

¶18 Powers argues that Interbel controls the job market because they only hire from within their company. Although they do hire their seasonal workers for apprentice positions, their policy for other skilled positions is to send out job notices. When Interbel conducts interviews, the evidence supports the finding that they look mainly at the necessary qualifications for the jobs they are filling.

¶19 At trial, Powers offered no statistics to prove disparate impact, nor did she offer evidence of the composition of the job market. She failed to demonstrate that any specific employment action undertaken by Interbel caused a disparate impact. Consequently, we conclude that the District Court did not err when it found that Powers did not meet her burden of proving her claims based on disparate impact.

## ISSUE TWO

¶20 Did the District Court err when it found that Powers did not prove illegal retaliation?

¶21 Powers contends that Interbel's refusal to hire her after she filed her complaint with the Human Rights Commission demonstrates its retaliation against her for a protected activity. Pursuant to § 49-2-301 of the Montana Code, an employer is not allowed to "discharge, expel, blacklist, or otherwise discriminate against an individual because he has opposed [company] practices . . . or . . . filed a complaint . . . ." A retaliation claim is a

separate action from the original discrimination suit. *Mahan v. Farmers Union Cent. Exch., Inc.* (1989), 235 Mont. 410, 422, 768 P.2d 850, 858. The complainant must show a causal nexus between the protected activity and the adverse action. The District Court found that Powers failed to prove any treatment by Interbel that resulted from her complaint, and therefore found for the Defendants on this issue.

¶22 Powers cites two job openings awarded to temporary construction workers as well as a job opening that was never filled after she sent in her application. Mike Gordon, a manager at Interbel decided not to fill the position advertised when he realized that Interbel did not need any additional workers. The job advertisement was withdrawn and nobody was hired. In regard to the other openings, the record includes proof that the company traditionally hires from the seasonal construction staff to fill the apprentice positions. There is no evidence that this is anything other than a reasonable business practice.

¶23 We conclude that the District Court's finding that Powers was not retaliated against in violation of § 49-2-301 was supported by substantial evidence and, therefore, was not clearly erroneous.

¶24 For these reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER